Filed 6/30/25  P. v. Mosley CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GARY LAMAR MOSLEY,<br><br>Defendant and Appellant. | A172031<br><br>(Contra Costa County<br>Super. Ct. No. 012301439) |

Defendant Gary Lamar Mosley has appealed after the trial court revoked his probation and sentenced him to three years in prison.  Mosley's appointed appellate counsel filed a brief asking this court to conduct an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  In a declaration accompanying the brief, counsel states he attempted to contact Mosley (who is no longer in custody) to inform him of his right to file a supplemental brief.  Mosley has not filed one.  After reviewing the record, we find no arguable issues that would warrant further briefing.[1]  We therefore affirm.

---

[1] We need not decide whether an independent review of the record is required in this appeal, as we have exercised our discretion to conduct an independent review in any event.  (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, 224–225, 231–232 & fn. 5 [independent record review is not required in appeals of certain postconviction orders; even if not required,

1

# I. BACKGROUND

**A. *The 2022 Grant of Probation and the Subsequent Petitions To Revoke Probation***

Mosley was placed on three years' formal probation in Fresno County on May 27, 2022, following a no contest plea and resulting conviction for felony domestic abuse (Pen. Code, § 273.5, subd. (a)).[2]  In April 2023, the Fresno County Superior Court granted a request by the probation department there to transfer Mosley's probation supervision to Contra Costa County pursuant to section 1203.9.  Conditions of probation included requirements that Mosley obey all laws and not contact the victim of his abuse.

In August 2023, the Contra Costa County Probation Department filed a petition to revoke Mosley's probation.  The petition alleged Mosley had been terminated from a court-ordered batterer's intervention program for excessive absences.  At a hearing on March 7, 2024, Mosley appeared in custody and admitted the violation.  The court revoked and reinstated probation subject to a requirement that Mosley serve a 60-day jail term.

The Contra Costa County Probation Department filed a second petition to revoke Mosley's probation in April 2024, as well as a supplemental petition in July 2024.  The April 2024 petition alleged that, in November 2023, Mosley violated the conditions of his probation by punching and threatening his former girlfriend (who was also the victim in the underlying offense that led to his no contest plea and initial grant of probation in Fresno County).  The

---

reviewing court may exercise discretion to conduct an independent review]; *People v. Freeman* (2021) 61 Cal.App.5th 126, 133–134 [independent record review not required in appeal from order revoking and reinstating postrelease community supervision].)

[2] Undesignated statutory references are to the Penal Code.

supplemental petition filed on July 9, 2024 alleged that on July 6, 2024, Mosley again violated probation and a criminal protective order by harassing the same victim—he "located [her] walking away from a friend[']s house, followed her for approximately 45 minutes, calling her derogatory names, threatening to have his female passenger beat her up and demanding to see his children."

The court held a probable cause hearing on August 1, 2024. After hearing testimony from police officers who had responded to the November 2023 and July 2024 incidents, the court found probable cause to support the allegations in the department's petitions and set a hearing on the merits.

B. *The August 2024 Probation Revocation Hearing*

At the merits hearing on August 22, 2024, the court heard testimony from the victim, R.D., as well as police witnesses. The court also admitted a certified document showing a criminal protective order was issued in May 2022 protecting R.D. from Mosley.

1. **R.D.'s Testimony About the November 2023 Incident**

R.D. testified she and Mosley were in a romantic relationship for about 10 years. They have three children. R.D. ended their relationship on November 13, 2023. She asked Mosley to leave the house in Fresno where she was living and where Mosley had been staying on and off. Mosley left. But when R.D. returned home the next day, November 14, 2023, at about 8:00 p.m., Mosley was inside seated on the couch. Mosley did not have a key to the house. R.D. asked Mosley why he was there, but he did not respond.

Seeking to avoid an argument, R.D. took their two daughters, ages one and two, upstairs to give them a bath. R.D. put both girls to bed after the bath and was then intending to bathe their six-year-old son. Instead, Mosley

3

brought their son upstairs and bathed him. R.D. went down to the downstairs bathroom and started putting on makeup.

Mosley came down to the downstairs bathroom and angrily demanded to know where R.D. was going, stating, " 'Where the hell do you think you're going?' " R.D., who had not previously intended to go out, told Mosley that since he was there to watch the kids, she was going out. Mosley then punched R.D. on the left side of her face with a closed fist. He continued to hit her, at least 10 times in total, with most of the punches hitting R.D.'s arms as she tried to defend herself by blocking the punches. She sustained bruises on her arms and a swollen forehead. As Mosley was hitting R.D., he questioned her about text messages on her cell phone, implying she was cheating on him.

Mosley threatened R.D., saying " 'Bitch, don't you know I will kill you.' " R.D. testified that she believed Mosley pulled out a handgun, although she could not be sure because she was blocking him with her arms. Based on Mosley's prior domestic violence against her, R.D. believed his threat to kill her was not a joke, and she feared for her life.

Mosley eventually left the bathroom, saying, " 'Let me hurry up and get out of here before you call the police.' " R.D. and Mosley both went outside the house, and R.D. saw that a friend of Mosley's was waiting parked outside. R.D. took out her cell phone to video record the car, and Mosley then pushed her down onto the gravel and took her cell phone. Mosley got into his friend's car and left. R.D. went inside and used her son's cell phone to call the police. On the date of this incident, R.D. had a criminal protective order protecting her from Mosley, which arose from a prior domestic violence incident.

R.D. later found that Mosley had left a holster behind.

### 2. R.D.'s Testimony About the July 2024 Incident

R.D. testified about an incident on July 6, 2024, when Mosley followed her. R.D. was leaving a friend's house in Fresno at about midnight and was walking to her car. A car passed her, stopped, and backed up. She saw that Mosley was the driver. A woman was in the front passenger seat. Mosley asked about seeing their children and then began insulting R.D. He threatened to have his female passenger leave the car and beat R.D. up. Mosley told R.D. that she needed to "sleep lightly," which R.D. took as a threat. Eventually Mosley had to make a turn due to a line of cars behind him, and R.D. was able to run to her car. R.D. called the police at some point during the incident.

### 3. Police Testimony

On November 14, 2023, Fresno Police Officer Nancy Xiong responded to a domestic violence disturbance call. Officer Xiong contacted the reporting party, R.D., who had scratches on her hands and scrapes on her right knee and left forearm. A gun holster was found in the house.

At about 1:20 a.m. on July 6, 2024, Fresno Police Officer Seth Karsten was dispatched to the area of Belmont and Fifth in Fresno. Officer Karsten located and contacted Mosley in that area.

### 4. The Court's Ruling

The court found by a preponderance of the evidence that Mosley violated the terms of his probation (in particular the requirement that he obey all laws) during the November 14, 2023 incident, by punching R.D., threatening her, taking her cell phone, and violating the criminal protective order that was issued in May 2022. The court stated it did not find by a preponderance of the evidence that Mosley displayed a gun. As to the July 2024 incident, the court found Mosley violated the terms of probation

(again the requirement that he obey all laws) by following R.D. in violation of the criminal protective order and by threatening her on that occasion as well.

## C. *Sentencing*

At a sentencing hearing on September 26, 2024, the court terminated Mosley's probation and imposed a midterm sentence of three years in prison (subject to custody credits) for his underlying 2022 domestic violence conviction (see § 273.5, subd. (a)).

Mosley appealed.

## II. DISCUSSION

Pursuant to *People v. Wende, supra,* 25 Cal.3d 436, we have reviewed the record and find no arguable issues that would warrant further briefing. Mosley was represented by counsel throughout the proceedings. He received notice of the alleged probation violations and had the opportunity to contest the allegations at an evidentiary hearing. R.D.'s testimony at the hearing and the corroborating testimony of the police officers who responded to the two incidents outlined above provide substantial evidence supporting the trial court's determination Mosley violated the terms of his probation. The court did not err or abuse its discretion in terminating probation and imposing the three-year midterm sentence. (See § 273.5, subd. (a).)

## III. DISPOSITION

The judgment is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.